457 So.2d 732 (1984)
STATE of Louisiana, Appellee,
v.
Dan JOHNSON, Appellant.
No. 16296-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
Writ Denied November 16, 1984.
*734 Smith & Hingle by J. Randolph Smith, Monroe, for appellant.
*735 William J. Guste, Jr., Baton Rouge, Atty. Gen., Johnny Parkerson, Dist. Atty., Michael Fontenot, Asst. Dist. Atty., Monroe, for appellee.
Before MARVIN, JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
The defendant, Dan Johnson, was found guilty after a bench trial of simple burglary in violation of LSA-R.S. 14:62 and of unauthorized use of a movable having a value of over $1,000.00 in violation of LSA-R.S. 14:68.[1] The trial judge sentenced defendant to nine years and nine months at hard labor on the burglary conviction and to eighteen months at hard labor on the unauthorized use conviction with the sentences to run concurrently. Defendant appeals his convictions and sentences relying on seven assignments of error. We affirm.

FACTS
On Monday morning, November 8, 1982, an employee of Tri-State Delta Chemicals, Inc. found evidence that the fenced compound housing the company had been illegally entered over the weekend. An inspection of the compound revealed that the office building and a warehouse building had been broken into and a 10-wheeler truck was missing from the yard.[2] An inventory of the contents of the warehouse was subsequently taken and it was discovered that agricultural chemicals valued at over $200,000.00 were missing.[3]
The investigation of the incident led deputies Monroe Hilton, Jr. and Richard Medaries of the Ouachita Parish Sheriff's department to Mississippi. There the truck and most of the missing chemicals were recovered and a number of arrests were made. Defendant's brother, Robert Johnson, was one of those persons arrested. Robert gave a statement to Deputy Hilton implicating defendant in the offenses. This information was relayed to Ouachita Parish authorities and a warrant was issued for defendant's arrest on November 19, 1982. Hilton and Medaries, who were in Mississippi, were informed by telephone and teletype that the warrant had been issued.
Defendant was arrested later the same day near his home in Tutwiler, Mississippi by Hilton, Mississippi Highway Patrolman Jimmy Dees and Chief Deputy Doyle Morrow of the Tallahatchie County, Mississippi Sheriff's Department. A copy of the arrest warrant was not shown to defendant at the time of his arrest but the officers read him his Miranda rights. Defendant was subsequently taken to the Tallahatchie County jail in Sumner, Mississippi. When defendant arrived at the jail he was questioned by Hilton and Medaries after he was again advised of his rights and after he signed a waiver of rights form. On this occasion defendant gave an exculpatory statement.
On December 6, 1982 defendant, while still in jail, sent for Dees and Morrow indicating he was prepared to make a statement. Before taking the statement the officers again advised defendant of his rights and had him sign a waiver of rights form. Defendant gave a full confession which was recorded by the officers.
On this occasion defendant admitted that he actively participated in the planning and commission of the offenses. He stated he and his accomplices held several meetings to discuss their plans and on one occasion, several days before committing the crime, he and two other men made a trip to Monroe *736 to inspect the chemical company. Defendant also stated that the missing truck had been used to transport the chemicals to Mississippi.
A short time after giving the confession defendant signed a waiver of extradition form. Later the same day he asked Morrow for some paper so he could write the facts about the commission of the crimes in order to get them correct. Morrow supplied the paper but did not give defendant Miranda warnings prior to doing so. The next day defendant handed Morrow an eighteen page written statement in which he detailed his entire involvement in the offenses. Morrow accepted the statement without giving defendant Miranda warnings but he did have defendant sign each page of the written confession. Morrow also signed and dated each page then locked the statement in his desk.
Upon being informed of defendant's confession and his waiver of extradition Hilton and Medaries went to Mississippi to take custody of defendant and transport him to Monroe. They arrived in Sumner on the morning of December 8, 1982. When they arrived in Sumner, Morrow supplied them with the recorded and written statements, the waiver of rights form signed by defendant and the waiver of extradition form. They brought defendant to Monroe the same day. Upon arriving in Monroe they questioned defendant. Before doing so they read defendant his rights and had him sign another waiver of rights form. Defendant repeated his earlier confessions. This statement was recorded.
Prior to trial defendant filed numerous motions including a motion to suppress the three confessions and the waiver of rights forms he signed in connection with them. After a hearing on the motion to suppress, it was denied.
Assignment No. 1
By this assignment defendant contends the trial court erred in denying his motion to suppress the confessions and waiver of rights forms. He argues this evidence should have been suppressed because: (A) his arrest was illegal; (B) he confessed under the influence of threats and promises made by the various officers taking the statements; and (C) he was given no Miranda warnings in connection with the written statement.

A
Defendant argues his arrest was illegal because it was not based on probable cause.[4]
A confession or inculpatory statement, which is the direct result of an illegal arrest, should be suppressed. State v. Rebstock, 418 So.2d 1306 (La.1982); State v. Edwards, 375 So.2d 1365 (La.1979); State v. Giovanni, 375 So.2d 1360 (La. 1979). A lawful arrest, whether warrantless or pursuant to a warrant, must be based upon probable cause. State v. Serrato, 424 So.2d 214 (La.1982); State v. Leatherwood, 411 So.2d 29 (La.1982).
The applicable standard for determining when an arrest warrant is based on probable cause was set out by the supreme court in State v. Rodrigue, 437 So.2d 830 (La. 1983) as follows:
Probable cause for an arrest exists when the facts and circumstances, of which the police have reasonably reliable information, justify the belief that the person to be arrested has committed a crime. The magistrate may issue an arrest warrant based on the facts and circumstances asserted in the affidavit, as well as those asserted verbally by the officer at the time the warrant is obtained. *737 State v. Haynie, 395 So.2d 669 (La.1981).
The process of determining probable cause for the issuance of search and arrest warrants does not involve certainties or proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior, as understood by persons trained in law enforcement and as based on the totality of circumstances. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The process simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system. Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).
Furthermore, this case involves the review of a magistrate's determination of probable cause prior to issuing the warrant. Such a determination is entitled to significant deference by reviewing courts. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). As the Supreme Court stated in Gates "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." 462 U.S. at ___, 103 S.Ct. at 2331. Additionally, because of "the preference to be accorded to warrants", marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable. United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). (footnotes omitted).
Whenever the information contained in the affidavit is supplied to the officer by a third person the underlying credibility of that person must be established. Credibility is to be determined from the totality of circumstances. State v. Brooks, 452 So.2d 149 (La.1984); State v. Morace, 446 So.2d 1274 (La.App.2d Cir.1984).
The affidavit from which the arrest warrant was issued states that defendant committed theft of the farm chemicals and truck or in the alternative he received and concealed the chemicals and the truck under such circumstances that he knew or had good reason to believe them to be the subject of a theft. The affidavit contains the following information relevant to the charges:
On the morning of November 8, 1982, Jack Holloway reported a burglary at Tri-State Chemical Company, Ouachita Parish. Taken was $204,000 worth of farm chemicals and a 1981 bobtail truck, valued at $50,000.00. On November 9, 1982, the 1981 International truck was recovered near Batesville, Mississippi empty of its contents. Subsequent investigation has resulted in the arrest of one Robert Johnson, black male, DOB: 6/21/62 of Rt. 1 Box 155, Tutwiler, Miss. This subject was charged by the St. Landry Parish Sheriff's Department with felony receiving of stolen property with bond being set at $100,000.00; this subject is presently incarcerated in the Tallahatchie County Sheriff's Office, Sumner, Mississippi, awaiting extradition. Robert Johnson has subsequently given a recorded statement to Dy. Monroe Hilton of the Ouachita Parish Sheriff's Department, who related to affiant that Robert Johnson stated he and his brother Dan livved (sic) together in the same residence. That Dan Johnson did not come home during the night of November 7, 1982; Dan Johnson came home 8:00 to 9:00 A.M. on Monday, November 8. At this time he asked his brother Robert to go with him to Clarksdale, Mississippi to rent a U-Haul truck and that he, Dan would pay Robert to help him unload some chemicals. Dan and Robert Johnson went to The Hardluck Hunting Club located on the Tallaha Road east of Charleston, Mississippi; upon arrival there, they were met by a white male who was introduced as Billy Ray Ford. Robert states Billy Ray Ford and Dan Johnson inventoried the contents of a large International truck which was parked behind the hunting club; he states after the inventory, that he and *738 his brother, Dan swapped the load of chemicals from the International truck to the U-Haul rental truck. After the load was swapped, Robert Johnson left this location leaving his brother Dan and Billy Ray Ford in possession of the chemicals. Robert further states that he and his brother Dan on Thursday, November 11, went to Clarksdale, Mississippi where he rented another Ford rental truck; he states that he and Dan then met with Earl Williams a black male, south of Matson, Mississippi on Miss. Hwy. 49. At this time, the three went to the residence of A.C. Johnson in Coahoma County where all the chemicals were loaded onto the second rental ruck (sic). He further states that on that date, that Dan and Earl Williams started toward Louisiana in the rental truck and they were followed by a Lee Arthur Martin a black male and this is the last that he saw of them. On November 18, 1982, additional chemicals were recovered from a storage building on the property of A.C. Johnson by the Ouachita Parish Sheriff's Department and the Mississippi Highway Patrol; these chemicals have been positively identified as having come from the Tri-State Chemical burglary.
This information is sufficient to justify a belief that defendant at least committed the offense of receiving stolen property. Robert Johnson's credibility is established by the fact that he is defendant's brother and lives with defendant and by the fact some of the chemicals were recovered from a place Robert said they had been stored. The totality of the circumstances establish there was probable cause for the issuance of the warrant and for defendant's arrest.

B
Defendant contends he would not have confessed in the absence of certain threats and promises made by the officers taking his statement. He contends the officers threatened to do him physical harm and to see that he received the maximum possible sentence if he did not confess. He also states the officers promised to let him go free if he helped them make a case against other men involved in the offenses.
Before a confession can be introduced into evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, menaces, threats, inducements or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Sonnier, 379 So.2d 1336 (La.1979); State v. Perry, 420 So.2d 139 (La.1982); State v. Broadway, 440 So.2d 828 (La.App.2d Cir.1983).
At the hearing on the motion to suppress defendant presented no evidence to corroborate his testimony that the threats and promises were made. The four officers involved all testified they made no threats or promises to defendant and denied defendant's specific allegations of threats and promises. We find no error in the trial court's determination that the confessions were free and voluntary and not made under the influence of threats and promises.

C
The record indicates that defendant freely and voluntarily gave the written confession and that the confession was not given in response to police interrogation or any other compelling influence. Such statements are admissible in evidence in the absence of Miranda warnings. State v. Smith, 407 So.2d 652 (La.1981); State v. Robinson, 384 So.2d 332 (La.1980); State v. George, 371 So.2d 762 (La.1979).
This assignment of error lacks merit.
Assignments No. 2 and 3
By these assignments defendant contends the trial court erred in admitting state's exhibits S-6 through S-14b into evidence[5] *739 and in permitting the witness who prepared exhibit S-6 to testify as to the contents of the exhibit.
Exhibit S-6 is a list of the chemicals taken during the burglary of the Tri-State warehouse. The value of the chemicals are shown on the list. It was admitted in connection with the testimony of Ms. Jacqueline Holloway, the bookkeeper for Tri-State. Ms. Holloway testified that she compiled the list from the inventory taken of the warehouse after the burglary was discovered. She was present in the warehouse off and on during the taking of the inventory. She stated that she prepared and maintained in her office a continuous running inventory of the contents of the warehouse and that she was able to determine what was missing by comparing the information she received from the persons taking the physical inventory with the running inventory contained in her office. She determined the value of the missing items by looking at invoices from Tri-State's suppliers.
Defendant contends the list is inadmissible hearsay because Ms. Holloway did not personally take the physical inventory. It was taken by other persons who supplied their findings to Ms. Holloway and she compiled the list from this information. Although the list itself as compiled by Ms. Holloway is hearsay, the supreme court has held that such a list is admissible under the business records exception to the hearsay rule. State v. Lewis, 288 So.2d 348 (La.1974).
Defendant argues that such a list cannot fit under the business records exception because it was compiled in response to a burglary; not in the regular course of business. Although a burglary is not an everyday business occurrence, it is a normal practice for businesses to take an inventory to ascertain what is missing when a burglary occurs. We find that exhibit S-6 was properly admitted into evidence insofar as it lists the missing chemicals and their value.[6]
The list included the missing truck and its value. Ms. Holloway obtained the estimated value of the truck by calling Tri-State's home office. The value of the truck is an essential element of the offense of unauthorized use of a movable valued at over $1,000.00. The trial judge erred in admitting evidence which was pure hearsay on an essential element of this offense. He should have ordered this information striken from the exhibit before allowing it to be admitted. However, the failure to order this information striken was not reversible error. A trial court's erroneous ruling on the admissibility of an item of evidence does not warrant reversal of a conviction unless the error is prejudicial to the defendant. See LSA-C.Cr.P. art. 921. As will be pointed out in our discussion on Assignment No. 4, defendant was not prejudiced by the court's ruling because it was established by admissible evidence that the truck had a value in excess of $1,000.00.
Exhibits S-7, S-8 and S-9 are photographs of U-Haul trucks. Defendant objected to the admission of these exhibits on the basis of relevancy.[7] The relevancy of the exhibits is established by defendant's *740 confessions. Defendant admitted that when he and his accomplices returned to Mississippi after committing the offenses, they concealed the Tri-State truck full of chemicals in a rural area behind a hunting camp. Defendant and others subsequently rented U-Haul trucks in order to transfer the chemicals from the Tri-State truck to various locations. (See the excerpt quoted from the arrest warrant affidavit, supra.)
Assignment No. 4
By this assignment defendant contends there was insufficient evidence to support his convictions.
The standard of appellate review of the sufficiency of the evidence is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 420 So.2d 663 (La.1982).
Defendant's argument that there was insufficient evidence is based upon the assumption that his confessions will be found to be inadmissible and will not be considered by this court in reviewing the evidence.
We have found the confessions admissible and based upon them a rational trier of fact could find the prosecution had proved beyond a reasonable doubt all elements of the crime of simple burglary. See State v. Smith, supra, which holds that inculpatory statements are in themselves sufficient evidence to support a verdict of guilty.
The confessions are also sufficient proof that defendant's use of the truck was unauthorized; however, they do not, in themselves, prove that the value of the truck was over $1,000.00. Since we hold that the value placed on the truck in exhibit S-6 is inadmissible, we must decide whether there was sufficient admissible evidence on this issue to support the trial court's finding on this essential element of the offense.
The only admissible evidence contained in the record concerning the value of the truck is circumstantial in nature. In order to meet the Jackson v. Virginia test for sufficiency of evidence, circumstantial evidence must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Willis, 446 So.2d 795 (La.App.2d Cir.1984); State v. Chism, 436 So.2d 464 (La.1983). In applying the circumstantial evidence rule to the facts of the instant case we must decide whether there was sufficient evidence to establish that the truck was worth more than $1,000.00 and to exclude a finding that it was worth less than $1,000.00.
The truck is a 1981 International bobtail truck. Ms. Holloway testified that Tri-State purchased the truck for approximately $40,000.00 eleven months before it was taken.[8] Her testimony was based on invoices to which she had ready access as the company bookkeeper. Further evidence shows that a large amount of chemicals were taken from the warehouse and these chemicals were loaded into the truck and hauled a substantial distance from Monroe to some point in Mississippi. The facts that the truck was relatively new, cost approximately $40,000.00 and was capable of hauling a large load a substantial distance are sufficient to exclude a finding that it was worth $1,000.00 or less. There was sufficient evidence to find defendant guilty of unauthorized use of a movable having a value of over $1,000.00.
This assignment of error lacks merit.
Assignments No. 5, 6 and 7
By these assignments defendant contends the trial judge inadequately complied with LSA-C.Cr.P. art. 894.1 in imposing sentence and the sentences imposed are constitutionally excessive.
The maximum sentences to which defendant was exposed were twelve years at *741 hard labor on the burglary conviction and three years at hard labor on the unauthorized use conviction. The actual prison time defendant received is well within the statutory limits.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983); State v. Brooks, 431 So.2d 865 (La.App.2d Cir. 1983); State v. Square, 433 So.2d 104 (La. 1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La. App.2d Cir.1983).
The sentencing guidelines of LSA-C.Cr.P. art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983); State v. Sepulvado, 367 So.2d 762 (La.1979). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, supra; State v. Smith, 433 So.2d 688 (La.1983).
Prior to defendant's sentencing hearing the trial judge had a form prepared listing all the 894.1 factors. He checked off the presence or absence of each factor and at the bottom of the form listed his reasons for selecting the sentences imposed. The completed form was filed in the record. At the sentencing hearing, the trial judge only articulated his reasons for selecting the sentences and did not discuss all the 894.1 factors. This practice has been held to be adequate compliance with 894.1. State v. Lemons, 430 So.2d 150 (La.App.2d Cir.1983); State v. Fergus, 418 So.2d 594 (La.1982).
A presentence investigation report compiled at the direction of the trial judge shows that defendant has no prior criminal record. The trial judge noted this fact but felt it was outweighed by the circumstances of the instant offenses. The circumstances taken into account by the trial judge are: the burglary of the warehouse was well planned and defendant participated in the planning; defendant made an advance trip to the crime site to survey the scene; a large amount of chemicals were taken in the burglary; and a truck belonging to the company burglarized was used by the participants as an aid in the commission of the burglary. After reviewing the record we find no abuse of discretion in the sentences imposed.
These assignments of error lack merit.
Defendant's convictions and sentences are AFFIRMED.
NOTES
[1] Defendant was charged by amended bill of information with simple burglary and theft of a truck having a value of over $500.00 in violation of LSA-R.S. 14:67. At trial, prior to the taking of testimony, the bill was further amended to state that the value of the truck was approximately $35,000.00. The court minutes reflect that defendant did not object to the amendment. Unauthorized use is a responsive verdict to a theft charge. LSA-C.Cr.P. art. 814.
[2] The keys to the truck were taken from the office building.
[3] The simple burglary charge was based upon the theft of the chemicals from inside the warehouse.
[4] Defendant, also intimates that his arrest was illegal because he was not shown a copy of the warrant at the time of his arrest. This contention is totally without merit. Defendant cites no authority, and we found none, which requires an arresting officer to show the person arrested a copy of the warrant in the absence of a request by that person to see it. See LSA-C.Cr.P. art. 217 which specifically provides "The officer need not have the warrant in his possession at the time of the arrest." At the hearing on the motion to suppress defendant admitted on cross-examination that he did not ask to see the warrant.
[5] Exhibits S-10, S-11, S-12, S-13 and S-14b are the taped and written confessions and the waiver of rights forms signed by defendant. The admissibility of these items is discussed in Assignment No. 1 and these exhibits are admissible for the reasons therein given.
[6] We further note that there is an abundance of evidence in the record that a burglary was committed wherein a truck load of farm chemicals were taken without considering S-6. Under these circumstances the detailed list of chemicals that were stolen is cumulative and if it is classified as inadmissible hearsay the admission of it is harmless error. The value of the chemicals shown on the list is not an essential element of the burglary charge.
[7] In brief defendant complains that the state did not lay a proper foundation for the admission of these exhibits. Defendant did not urge this as a grounds for his objection at trial and we do not consider it here. A new ground for an objection cannot be raised for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Davis, 357 So.2d 1125 (La.1978); State v. Fowlkes, 352 So.2d 208 (La.1977).
[8] Ms. Holloway stated that the truck itself cost $32,800.00 and that approximately $8,000.00 worth of accessories were added to it at the time of purchase.